## PennDOT v. Place

*Nicholas M. Panko,* for petitioner.
*Francis P. Bach,* for respondent.

RUBRIGHT, *J.,* October 30, 1986—On May 28, 1986, the Department of Transportation mailed to Petitioner an official notice advising him that his driving privileges were being suspended for a period of one year, effective July 2, 1986, due to his viola-

tion of §1547 of the Vehicle Code on May 10, 1986. Petitioner filed the instant appeal on July 28, 1986.

On May 10, 1986, petitioner was arrested for driving under the influence of alcohol in the Borough of Schuylkill Haven. Patrolman Robert Schaeffer, of the Schuylkill Haven Police Department, testified that, while at the intersection of South Garfield Street and Route 61, he observed a brown Jeep Wagoneer travelling north on Route 61. Patrolman Schaeffer followed the Wagoneer and observed as it crossed the yellow line and swerved. Upon stopping the Wagoneer, the officer noted the driver, identified as petitioner, had alcohol on his breath, glassy eyes, and slurred speech. When asked to exit his vehicle, petitioner lost his balance and had to lean against his vehicle. He was asked to perform standard field sobriety tests, all of which he failed. He was placed under arrest for driving under the influence and taken to the Schuylkill Haven Police Department. Upon arrival at the station, petitioner was requested to submit to a chemical test to determine the amount of alcohol in his blood and advised of the consequences of a refusal. After the consequences of a refusal were explained a second time, petitioner agreed to submit to a blood test and was transported to the Good Samaritan Hospital. When they arrived at the hospital, petitioner was given a standard hospital form which releases the hospital from liability. Petitioner refused to sign the release and blood was not withdrawn. Although the police officer again advised petitioner of the consequences of a refusal to submit, petitioner persisted in his refusal to sign the form.

Patrolman Schaeffer determined that petitioner's refusal to sign the release constituted a refusal to submit to the blood test and he so notified the Department of Transportation. Based upon the alleged

refusal, the Department of Transportation mailed an official notice of suspension to petitioner's residence. At the hearing on this matter, petitioner testified that he never received the official notice of suspension in his mail. He was not aware of the suspension until mid-July when he received a phone call from a state police officer advising him that his license had been suspended and should already have been sent to the Department of Transportation. Petitioner contacted his attorney, who confirmed the suspension, and the instant appeal followed.

At the hearing, the Department of Transportation moved to quash the appeal as being untimely. Although there is no doubt that the appeal was not filed within 30 days from the date the notice was mailed, we cannot hold the petitioner to that time limitation if he never received the notice in the mail. Since the appeal was filed within 30 days of the date when petitioner received notice of the suspension by telephone, we will not quash the appeal.

On appeal from a suspension for refusal to submit to chemical testing, the court must hear evidence and reach the merits of the suspension. In order for a suspension for a refusal to submit to a chemical test to be sustained, the Department of Transportation must prove that a driver was placed under arrest for driving under the influence, that the officer had reasonable grounds to believe the driver was driving under the influence, that the driver was requested to submit to a chemical test and refused, and that the officer warned the driver that his operating privileges would be suspended upon his refusal to submit to a chemical test. Hando v. Commonwealth, 84 Pa. Commw. 63, 478 A.2d 932 (1984).

Although the law is clear that anything substantially short of an unqualified assent to an officer's re-

quest that the arrested motorist take the test constitutes a refusal to do so, there is nothing in the Vehicle Code which requires a driver, as part of his consent to a blood test, to execute a document limiting or waiving the tester's liability. Maffei v. Commonwealth Department of Transportation, 53 Pa. Commw. 182, 416 A.2d 1167 (1980). Under §1547 of the Vehicle Code, a motorist is deemed to consent to a blood test, not a blood test accompanied by a signed waiver of liability. "License suspension is a sanction for refusal to submit to a chemical test, not refusal of a test linked with execution of a release". Id. 416 A.2d at 1169.

In the instant case, the evidence establishes merely that petitioner refused to sign a form releasing the hospital from liability. At no time did petitioner refuse to consent to the blood test itself. Therefore, the suspension cannot be sustained.

Accordingly, we enter the following

## ORDER OF COURT

And now, this October 30, 1986, after hearing and careful consideration of the evidence, the appeal of John B. Place from a suspension of his operating privileges for a period of one year is sustained and the order of the Secretary of transportation is reversed.